First case on our morning docket is Braven v. Hursey, et al. We ready to proceed, counsels? We've got Mr. Grifflinger ready? Yes, sir. Go ahead. I'm going to pour a cup of water here. Please, the court. My name is George Grifflinger. I'm here today on behalf of the plaintiff in this matter, Mr. Braven. We have a fairly narrow issue to discuss in this matter, one that has not been directly addressed by any appellate court in the state of Illinois to date, but one which has great importance to parties in their litigation, and that is whether or not contention interrogatories, such as were served in this matter, are properly served, or whether or not, or whether they, in fact, violate attorney-client privilege. The only direct case or main direct case on point is Monnier v. Chamberlain. In that case, the court said that those memorandum reports or documents reflect the employment of the attorney's legal expertise, those which reveal the shaping process by which the attorney has arranged the available evidence for use in trial as dictated by his training and experience, and the appropriate decision to be made in preparation for trial and privilege. Now, the difference here is that the defendant has not asked us for such a memorandum that has been pre-prepared. What the contention interrogatories do is require that you, in fact, prepare such a memorandum, even if you don't have one, and say, OK, here's how I'm going to prove each of the issues in this case. Here's the fact. Here's the document. Here's what we're going to prove. You will note that nowhere in the objections that were filed in this case did anyone claim that they don't have every single document in the name of every possible witness who has been to testify at the trial in this case. What they've asked us to do, after receiving the documents, is now to marshal them and explain to them how we're going to prove our case. And that, I maintain, is asking us not only for privileged information, but to prepare a document which shows the present impressions of the lawyer and how he intends to marshal the facts in the documents to prove the interests of the case. Now, is there a proper time and place for such a thing? Perhaps. Certainly at trial, we're going to have to do that. And there is the other possibility that at the end of discovery, as opposed to the beginning of discovery, when this was filed, we may have to respond to a motion for some judgment. That's at the end of discovery. What this amounts to, as far as I'm concerned, the practical effect of this, is moving the burden of responding to a motion for summary judgment before discovery has been completed, back at the beginning of discovery, rather than at the end. Did you ask to delay your answer to the interrogatories to the end of discovery? No, sir, I did not, because I believe that they are still, unless in response to a motion for summary judgment, they're still giving my mental impressions, my idea of how I'm going to, my proof plan of how I'm going to try my case. It looks like it, and you can correct me on this, because our understanding of federal procedure is more limited than the practicing lawyers who deal with both systems. But it appears in the federal system, they do get pretty close to contention in interrogatories, but they delay their answers until you're on top of the tribe. Generally, contention interrogatories are proper in the federal system. Generally, they are later in the case. And I think the case in the quotations, Judge Brazil, which we included in our brief, makes it very clear that early in the case, they are certainly difficult, even difficult to respond, because when you haven't taken depositions of witnesses, you don't have any idea what they're going to say. Essentially, it is pushing, it's making the case a battle of discovery as opposed to a battle of facts. Could these same or similar questions be asked in depositions? Yes, sir, absolutely. And that's part of the process that I think is also being misused here, at least in the history and 40 years that I've been practicing law in Illinois, generally interrogatories are to find out and to advance and produce, or to get the documents, get the names and addresses of the witnesses, maybe get a few general facts, but not to give long, narrow answers about the facts of the case. That has always been held by most courts to be more proper than a deposition. These require me, the requirement at this point in the procedure, to lay out facts which I may not even know. It's a way of defeating the case before it gets started. And if they're allowed, it's going to make— You can always supplement them. Well, yeah, you can supplement them, but if you say you can't prove it, you know what the next motion is going to be. It says you can't prove it, so here it comes. I don't know if you'd have to go to that extreme. No, but I can see it coming, quite frankly. I've been very capable before. I know how it works. And this is something that's just begun to start happening, at least in the jurisdictions where I practice. This is the first time I've seen it. I've seen it after this fact. This is the first time when it has presented itself to a position where it can be brought to this court, or any appellate court, in a timely manner. Let me ask you this. I'm going to be a little drawn out, so bear with me if you would. And since it's a case of first impression, I looked at the interrogatory rule, and under 213J it says the Supreme Court can come up with these form interrogatories, you know. And they've got them for automobiles and stuff like that, but they've got them for malpractice, too. Right. Bear with me. I know I should give you a copy of this. But number two on this medical malpractice interrogatory is to plaintiff. Describe the actual missions of the defendant, the specific diagnosis, procedure, test, therapy, treatment, or other type of healing arts, ministration which you claim caused or contributed to the injury for which you seek damages. Then they want the date, the name, the documents relied on, the persons who have knowledge. That sounds like a contention interrogatory. Almost. However, when you look at that, you have to take into consideration that before you can even file a medical malpractice, you have to have the opinion of a medical expert setting out what negligence is and why it's negligent. So basically, all you would have to do to comply with that would be include the medical records and the expert's opinion. So are you saying that in a case that requires expert testimony, a contention interrogatory would be okay, but in where it's a lay testimony only, it's not? Well, I think it's different because you should have that information. In some cases, you would not. And medical is the only place where you have to have the opinion ahead of time. And I can tell you that in legal malpractice, for example, which I have a little bit of experience in, you could not answer those questions at the beginning because you wouldn't have an expert opinion necessarily. I've had cases, and we've got one going right now where it's taken us a year and a half, and we still don't have the documents since they were ordered to be produced, which would be necessary to prove the case. The worst case would be fighting against the ex-husband who's not a party to the case to get the documents we need about the businesses and such. So I think they would be equally improper in any other kind of a malpractice case, simply because the requirement of having the opinion of negligence before you file the case isn't a requirement any place else. Do you think that's a contention interrogatory that the Supreme Court approved? I think so. Okay. It very clearly is. But I think it's approved simply because of the manner in which you have to file the cases and the various laws and rules that apply to medical malpractice cases as opposed to any other case that faced the earth. You've been practicing for 40 years. I don't have 40 years, but I've got over 30 and somewhere in between there. And when we both started, discovery was a lot different, a lot bit more general. People practicing at that time that had 40 years' experience would have turned over or would turn over in their grave over these interrogatories today. Sandy Meier used to really be upset about that. Couldn't ambush anybody. Right. That's why, you know, caught the tail end of that. But things have kind of been going in this direction, it seems, ever since. Maybe this is the ultimate thing. I don't know. Well, I would hate, frankly, to hate to see the state system be a copy of the federal system. Not exactly my favorite place to litigate cases. We're a lot nicer here than over there. And not because there's a certain court level required when you start requiring people to do things before the information is available. And that's why we don't do it in Illinois, as far as I'm concerned. When we finish discovery, you've got everything there, then we have a thing called motion for subject matter. I have no problem responding to those when I've got all the information. But to require somebody to do this at the beginning of the case, there hasn't been a deposition taken in this case. You put all your eggs in one basket, as they say. You did not ask the judge to say, let me do this before trial and I'll be able to do it. I imagine who did you have? Judge Young? Judge Young, yes, sir. Who has similar type of practice, similar amount of time? Yes, sir. We can't speculate on how he would rule if you had done that, but we may not be here today if you had. But now we're sitting here with a dismissal with prejudice. Yes, sir. And for better or for worse, that's how we're here. And quite frankly, if it hadn't come up this way, it may never have come up. Be held in contempt is the only other way that I know of. I was trying to think of how you'd get here because you can't get here on a discovery issue. You're right. That's correct. And that means that we have to keep having this battle over and over and over and over again, or we have to decide that we're going to give away our entire theory of the case at the beginning of the case, or we're going to be found to have been improperly answering the questions when we say we can't answer them. And there are some places, some counties where I think that might work, and there are other counties where I think my case might get dismissed anyway. Right. So it's something that's been considered by a lot of other courts. I've listed some of those in my brief, and I think it's an issue that needs to be taken head on. And so we have some guidance on what we have to do. In particular, strange facts in this case, that's where we've gotten to. The other issue in this case. Let me ask you this. Sure. How do you respond to the defendant's contention that they made it clear that they were not seeking anything that would reveal the plaintiff's thoughts, strategies, or product? Well, I understand what they're saying. I also understand what they've written. And that's totally inconsistent. If they're not seeking any of that, then I shouldn't have to answer the question. The only way I can answer the question is to do exactly what they said they're not asking me to do. Did you articulate your claim of privilege so that the trial court could assess it? Well, yes, sir. And that was the argument that we made. And, you know, there's an issue here about privilege law. And that's Paul's issue. We produce all the documents. We're not claiming that a single document in this case is privileged or discovered. And there's affidavits on both sides. We produce everything. We've got baggage boxes full of documents. What they're asking for, though, is to marshal them. And, actually, they're asking me to prepare a memorandum which shows my marshaling of the facts, my attorney-at-work product before we get to trial, and before, really, I have the authority. Why wouldn't it have been appropriate for you to answer that interrogatory and submit it to the judge as privileged? And that was your privilege law, the answer to the interrogatory. Give it to Judge Young and say, you read it. You could see this as my work product. That's why I can't give it to the other side. But Judge Young doesn't right now, all he knows that you said it's privileged. He doesn't know why it's privileged. Oh, I think just by the nature of the question it's privileged. There's no way that you can answer these questions without using the attorney's thought processes to marshal things, put them in the order that you're going to present them, and how they're relevant. And, basically, that's the problem. The problem is that it makes me prepare a document which, if it had been prepared prior to the request, would have been a privileged document simply because it requires me to use my mental abilities, my skill and education as a lawyer, to put this package, if you will, together for each one of these questions. The other issue is the question on producing answers regarding pornographic materials that allegedly were on the computer. A, one thing, we've never seen any of this. It's never been produced to court. It's never been produced to me. We've heard a lot of talk about it, and I'm sure you're going to hear a lot of talk about it in a couple of minutes. But the only thing that that could possibly be wrong about it is the for-cause issue in the interference with contract claim. The contract, breach of contract that we're talking about here, is a failure to pay the purchase price for the plaintiff's business that has nothing to do with his conduct in any way. There's a price to be paid if they didn't pay it in the story. As far as the rest of it, there's a breach of contract, breach of the employment contract. The employment contract quite clearly says that cause or no cause is not a fact to be considered. This is how much to be paid, and if it wasn't paid, we're suing for unpaid salary. And the contract provides that there will be a severance pay, even if for cause, and we're suing for that. I thought you said, I thought your complaint said he was fired without just cause. In the interference with contract, yes, sir. That's the only – there it would be wrong if there was cause. I won't dispute that. However, the other part of that is, is that we have default judgments against the corporations, which are essentially the alter ego of Mr. Hersey, and Mr. King was the president of one of those corporations. And the issues in some of those was whether or not he was fired for cause. Now, for whatever reason, defendants decided not to enter their appearance, not to have – not to hire counsel for the corporations. The corporations were in default, the judgements against the corporations, and all issues are considered – decided in the defendant's favor. And given the fact that they are privy to the corporations, collateral estoppel prevents them from getting into that issue, in my opinion. So that's not really an issue anymore. And in answering these questions, there's no – they've not presented any evidence and answers interrogatory or anything else, how they claim that this material was on the hard drive by my client. Computers are funny things.  Did you send them any contention interrogatories to find out why they thought it was – It would also be improper to send a contention interrogatory. Just answer. But it was certainly questions I was prepared to ask in deposition when we got to that point. How did you know? And that's why I think those questions should be asked in deposition, not interrogatories. Thank you, counsel. You've been given the opportunity to give rebuttal. Who's first? I've got two. Given the order that Mr. Bloomberg proceeded, we're going to go in the order that he proceeded. So I will go first, if that's okay? That's fine. All right. It's Dan Nestor, on behalf of Mr. King. And I'm here with me is Mr. Blazin, one of my associates. Your Honor, please support Mr. Ripplinger. Unfortunately, to take a little bit of sizzle out of Mr. Ripplinger's argument, this is not a case of first impression. This is a very simple, straightforward case. The part that I'm going to address has to do with what we'll call the disputed, the alleged improper transactions. There are two components that are before you. One has to do with pornography, which Mr. Blazin is going to handle, and the other has to do with the alleged transactions. There were a series of motions to dismiss that were filed in this case because Mr. Ripplinger and his client failed to identify one transaction that supported their claim. And specifically, they made a claim, and I quote, at C-240 in the record. This is Mr. Ripplinger and his client's complaint, that Defendant King assisted Defendant Hersey in the transfer of all the assets of the corporation to another entity. And basically says that these were all, quote, contrary to the best interests of Big Dog Enterprises. So there's an alleged transaction out there that occurred that was nefarious or improper. And that was the basis of this complaint. So we filed a motion to dismiss saying, tell us what the transaction is. Well, then George said, well, yeah, he just put it in front of the horse. We need discovery in order to, I don't know what it is, exactly the point that you all were alluding to. He should have the chance. And that was the question. Do you have to file a complaint with a good faith basis for some basis upon which you're alleging the fact that there was an improper transaction? So we produced reads, boxes and boxes of documents, contrary to what Mr. Ripplinger said before this court today. They never produced one document, not one document, the entire time. I don't know what affidavit he's talking about, but we never received one document. So in the complaint, they allege an improper transaction. We go through the motion practice and Judge Young says, look, I'm going to let them have discovery, just the point that we're alluding to. The unfairness of saying, look, I at least get a chance to look at their documents. We say, give us the document, one transaction, identify it. And while this may have been raised in a series of different requests at the motion to dismiss hearing, we asked for the document. In our answer, we deny that there was any such transaction, specifically at C-503. We specifically deny this, putting this directly at issue, saying there's no improper transaction. Again, a very narrow focus discovery request. We then produced all these records. Again, Mr. Ripplinger had them for months to review, months on end, because he still can't identify the transaction or produce one document that supports that there was something wrong. Again, we can't prove a negative. There was nothing that happened wrong. Show us what happened. Show us where this transfer of assets occurred. We then have to propound discovery requests. We do that on June 5th. We ask specifically to identify the transaction. Now, that request may very well have been, quote, in the form of a contention interrogatory, such as this. We also have a request for production. But we say, give us the basis upon which you allege that there was an improper transaction. That's a contention interrogatory. I'm asking for the basis on which he contends that there was an improper transaction. What did our client do with any financial transaction? Here are all the records. Show us what you're talking about. Nothing. Failed to respond within the required time, notwithstanding that we've been asking for this for months. A month and a half after it's done, we engage in a series of calls and letters. And this is exactly what Your Honor has alluded to. George said, you know, you can't get our mental impression. We say, no, you know, George, we're not asking for mental impression. On the record, C-760, C-760, we specifically state, and I quote in our 201-K letter, this is our second 201-K letter in this case. As I indicated on our call with you today, defendants do not seek your thought processes or internal written memoranda. Instead, they seek to understand the basis of your client's claims against them. By way of example, plaintiff alleges that Hersey caused the removal of assets of Big Dog and transferred them to another entity. We go on to say, because this is part of your claim, we want you to give us information on that specific element. Nothing. We did nothing following that. We finally get discovery responses on August 4th. These discovery responses simply interpose an objection saying you're seeking work product. Don't produce one thing. Don't identify one transaction. The litigation continues. My client continues to incur costs if they're properly joined in this matter without one basis for this claim. We filed a motion to compel on August 15th. That motion was a month and a half after discovery was due, what we have been asking for for months. Again, not one document produced, not one transaction identified. And again, standing on that it's alleged work product. We go before Judge Young on September 17th. Judge Young says, George, I understand your point. We're not asking them to produce mental impressions. Identify one transaction. Produce a document showing one thing that was wrong. One financial transaction. Paragraph 3, Judge Young specifically said in his response to defendants interrogatories, plaintiffs shall identify any and all transactions which support his claim. We are not asking for mental impressions. We're asking for the transaction upon which this complaint was filed. A complaint that Judge Young refused to dismiss, notwithstanding that plaintiffs could not identify one transaction. Now, it required us to produce volumes of documents, notwithstanding they couldn't identify the transactions. So we said, fine, here's all the financial records. Tell us what you're talking about. What did we do wrong? Nothing. Nothing produced. More attempts to resolve indifferences. Met with nothing. Not one identified transaction. We then have to go in because there is nothing being produced about what this transaction is that occurred. And we have to file a motion about his failure, the plaintiff's failure to respond. We have another hearing on February 4th. And in the words of Yogi Berra, it's deja vu all over again. We go in and the exact same thing is said. You know, Your Honor, it's the mental impression. Judge Young's vague enough. Says, George, just tell them the transaction. This is ridiculous. Was there any discussion about providing it to the judge in camera so he could make a decision whether it was revealing work product or the privilege that the plaintiff was asserting? The discussion went throughout the whole parameters. Yes, we were trying to delve into what's the problem. The first hearing, George said, I haven't had a chance to get through the documents. The second hearing, George said, well, there's a lot of documents here. I'm getting through them. But it wasn't that there's a problem with the work product. Because all we were saying is identify the transaction, not the work product. We don't want your mental impression. We want the transaction. So it was really simple and straightforward. It was just tell us the transaction. Can I ask you real quick? Yes, please. Were there any depositions taken? No. Anybody asked to take them and they were refused? Well, we were trying to understand. We do normally go forward with depositions until we have document production. And we have now received one document. And also they have never identified the transactions about which we were going to have a doubt on. And so all we're saying is show us the transaction. So we're forced to move again. We go forward. February 4th, no, nothing. He doesn't produce anything. Then we go forward again. April 2nd, we come in. And now Judge Young says, I really mean it, George. And I'm going to give you 14 days to produce this document that identifies the transactions. And if you don't, because, you know, I denied the motion to dismiss because he needed the documents so that you could identify the transaction. Now you have the document. You won't identify the transaction. And in 14 days, if you don't produce the document showing the transaction or identify the document, your case is dismissed. And so it went forward and was dismissed. We begged. We gave them all the time. We produced our documents without them showing what transaction they wanted so they could go do the fishing expedition and look through. They still couldn't come up with it. This was the appropriate remedy. Judge Young showed all the patients in the world to try to allow this to happen. This was entirely within his discretion. He did not want to do this. This was something that the plaintiff forced him to do. Now on the second part of the pornography, Mr. Blasey can address that. Good morning, Your Honors. Please support Mr. Gryffindor. Your Honors, as Ms. Knessler told you, I'm here to speak about the interrogatories that asked for the plaintiff to identify and describe the various pornographic materials that he had been viewing on work equipment during work time. In his complaint, the plaintiff alleged, one, that he was fired without just cause, two, that our client, Mr. King, fired the plaintiff for Mr. King's own benefit, and that the parties had been engaging in the transactions which Mr. Knessler just talked about. Mr. King, in his answer, set up a number of defenses. One of those defenses was, plaintiff, you were, in fact, fired for just cause. Among other reasons, you were looking at many disturbing pornographic materials in your computer. And to the extent there is a thing that there is a thing. Does the pornography discovery apply to any part of the complaint other than the just cause? Yes, Your Honor. It does. If you could explain that. I think we could infer maybe the just cause and think about that. But what about the other causes of action? Sure. Your Honor, the counts against King were not counts for breach of contract. They were counts for tortious interference. And in those counts, plaintiff expressly alleged that he was fired without just cause. Plaintiff expressly alleged that he was terminated by Mr. King for Mr. King's own benefit. So therefore, plaintiff has not just cracked the door open a little bit as to why he was fired. Plaintiff flung the door wide open. He brought the tortious interference claim. He expressly put the motivations and the cause of his termination at issue. Moreover, the plaintiff in his tortious interference claim says that Mr. King's conduct is so egregious, so wanton, that he seeks $20 million in punitive damages against Mr. King. And as Your Honor is very well known, too, in order to recover punitive damages, you need to show wanton or willful or egregious conduct. Mr. King had terminated plaintiff because plaintiff had been looking at these pornographic materials on his computer. And these weren't just regular pornographic materials to the extent there are such things. These were depraved, disturbing materials, suspected child pornography, suspected cannibalism of a newborn human baby or late-term fetus, bestiality, group sex, and I'll spare you the rest of the details. So these were serious concerns, obviously serious concerns for an employer who has an employee looking at these materials on a company computer during work time. Did he have a breach of contract for not paying him for a portion of this business or selling a business? I thought that's what he said in this initiative. Yes, Your Honor. So how does that, how does the pornography go to the breach of contract? Well, the breach of contract claims, Your Honor, were asserted against the corporate defendants. In addition to Mr. King, there were three other defendants in this action. There was Mr. Hersey who had filed a suggestion of bankruptcy. There's not a breach of contract against your client? That's correct, Your Honor. There is not. Okay. The breach of contract claims that you're inquiring about that Mr. Riplinger asked about were claims against these corporate defendants. Mr. Riplinger, the plaintiff, moved for a default judgment against these corporate defendants. Mr. King said, wait a minute, I oppose you seeking default judgment. I want to reserve all of my rights as against these corporate defendants because I was an employee. And Mr. Riplinger, in response to that, in response to Mr. King attempting to reserve his rights, said, my default motion against these corporate defendants is not targeted against you, Mr. King, and you, Mr. Hersey, the other co-defendant. Now the plaintiff wants to go against what he just said and try to use that default judgment on the breach of contract claims to collaterally stop Mr. King from contesting the tortious interference claim. And that's the basis of plaintiff's contention as this is irrelevant. He says, I got you, Mr. King. You can't contest your tortious interference. Well, Your Honors, Mr. King asserts that plaintiff waived this collateral stop argument. He said these default judgments aren't directed against you. They're directed against the corporate defendants. But even if we want to go into the collateral unstoppable argument that Mr. Riplinger mentioned briefly, let's take a look at that. As Your Honors are aware, there are a number of elements to establish collateral unstoppable. The first is that the issues are the same, that you have a prior action and then a later action with the same issues. Here, Mr. Riplinger is wanting to use, plaintiff is wanting to use the default judgment on a breach of contract claim to collaterally stop a different defendant on a tortious interference claim. One's a tort, one's a contract. There's obviously no similarity. There's no identity of issues between those actions. And moreover, the first judgment, the judgment against the corporate defendants, was taken by default. And Illinois case law says that a default judgment's conclusive effect is only as to the ultimate issues of that claim. The ultimate issues in a breach of contract claim are what? There is a contract, there is a breach, and there have been damages. Obviously, those ultimate issues have nothing to do with these other issues that are alleged in the tortious interference claim. They have nothing to do with the wantonness or lack thereof of Mr. King's conduct, that conduct for which plaintiff is seeking $20 million in punitive damages. Mr. King's good faith belief that he was properly firing the plaintiff, that he was looking out for the interest of his corporation, of Mr. King's company, his actions are privileged under Illinois law. And that is why these interrogatories, asking the plaintiff to identify and describe the materials that he was looking at, on company equipment, during company time, are relevant. Now, Mr. Ritlinger, in his argument, has made a couple of points. He says that these pornographic materials have never been produced. Your Honors, let's be clear on what our focus is here. We're here on appeal because the plaintiff failed on three separate occasions to respond to discovery requests. The plaintiff had every opportunity, if he wanted to, to bring a motion to compel. Mr. King, I'm not conceding that Mr. King did anything wrong in discovery, but in any event, that issue is not here before this Court. It's the plaintiff's failure to respond to the discovery that's before this Court. Moreover, Mr. Ritlinger said something about, well, Mr. King had established that it was the plaintiff looking at these pornographic materials, that they didn't establish who was actually pushing the keys and looking at that. That's exactly what discovery is for. We get a chance at the opportunity in discovery to find out, well, was it him? You know, that was Mr. King's defense, is that the plaintiff had been looking at these materials, and we propounded interrogatories asking just that, you know? State whether you looked at these materials in your computer. We don't have to establish it before we seek it in discovery. That's oxymoronic. That's surely putting the cart before the horse. That's the very purpose and the very nature of discovery. So in conclusion, Your Honors, the interrogatories seeking information regarding the pornographic materials the plaintiff had on his computer, on his work computer that he viewed during work time, were clearly relevant to plaintiff's tortious interference claims against Mr. King as well as Mr. King's defenses asserted in response to those claims. Thank you. The only thing I'm going to do at this point is call the Court's attention to our answers to requests for production. We filed this in the appendix 23009. So page of the appendix you're looking at? Page 43. Okay. Throughout, we've responded that the defendant already has all of the documents and that he has produced them. The plaintiff does not have any documents that have not been produced by defendants to his knowledge. So there is really no question about the documents. They're all there. What they're asking us to do, again, is to marshal them and show them how we're going to use them. And the other response I'd like to make at this point is mention that we should identify the subject of our inquiry in our answers to the interrogatory before deposition. I know of no rule that requires me to tell them what my mental impressions are and what my preparations are for taking the deposition from their clients. Is there a difference, excuse me, between producing a document that you are going to rely on in trial as opposed to telling them why you rely on it? Here's the document. I'm not going to tell you why that's an important document or how I'm going to use it or how I'm going to cross-examine, but here's the document. Is it your mental process how you're going to use it? Well, I've used my mental process to pick that one out, saying this is the right way to do it. I guess that's my mental process. That one, but there's an additional process as to why and how you're going to use it. And, again, there are questions that go to that. What I believe the law requires is that I produce all documents that are relevant or may be relevant to the inquiry. And my answers are that they're there. You have every document that we're going to rely upon, but you can't require me to pick out and show you which one's really important to you. And that's the whole trustful thing, because to be able to do that, that comes out of my head, that comes out of my training, that comes out of my education. And that's what's required. I don't know who disliked this decision more, one with the defense or the plaintiff, the next time around. Can you imagine when you get three boxes of documents from somebody and say, Well, where's the one I asked for? What's in the box? I mean, how many times has that happened over the last 40 years you've been there? Yes, it's done before. I know how that works. But there's a difference between saying here are documents that are relevant to the case and here is the document that I'm going to use for this particular point. I think that's the difference. Thank you, gentlemen, for your arguments today. We'll take the matter under advisement.